**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHARLES FRANCES MACK,**

    **Plaintiff,**

v.                                        Case No.  8:05-cv-425-T-30MSS

**METROPOLITAN LIFE INSURANCE**
**COMPANY, a Foreign Corporation,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant Metropolitan Life Insurance Company's Motion for Final Summary Judgment Based on Review of Administrative Record with Supporting Memorandum of Law (Dkt. 28), and Plaintiff's Memorandum in Opposition to the same (Dkt. 35).

### **I. FACTUAL BACKGROUND**

Plaintiff, a former sales manager at Infinity of Tampa, began his employment on April 3, 1996. During his employment with Infinity of Tampa, Plaintiff was a participant in the employer sponsored Welfare Benefit Plan (hereinafter "The Plan") which included short term disability (hereinafter "STD") and long term disability (hereinafter "LTD") benefits. The Plan was administered and funded by Defendant.

On or around November 18, 2003, Plaintiff was absent from work due to anxiety and pneumonia (Dkt. 29, Ex. B, A.R. 45). Subsequent to his absence, Plaintiff submitted a

Disability Claim Attending Physician Statement (hereinafter "APS) from Dr. Sadhana Shah, indicating that Plaintiff had been diagnosed with pneumonia and anxiety. The APS also advised Plaintiff to seek psychiatric counseling prior to returning to work. Id., A.R. 41-43, 50. Shortly thereafter, Plaintiff sought STD benefits under the Plan for alcoholism, depression, and bipolar disorder.[1] Plaintiff began receiving STD benefits on November 30, 2003. Plaintiff resigned from his position on December 19, 2003.

On or around April 23, 2004, Plaintiff's treating physician, Dr. Michael Sheehan, submitted a Mental/Behavioral Functional Assessment report. (Dkt. A.R., 79-82). On this report, Dr. Sheehan identified those behavioral manifestations that he felt prohibited Plaintiff from performing his job. Id., A.R. 80. Specifically, Dr. Sheehan opined that Plaintiff was aggressive, unable to control his emotions, and his content of thought included suspicion and antisocial behavior. Id. Notwithstanding these observations, Dr. Sheehan indicated Plaintiff was able to return to work without accommodation as of the date of the report. Id. A.R. 81.

On August 11, 2004, Defendant sent Plaintiff a letter informing him his benefits were denied and detailing the reasons for the denial. Id. A.R. 139-140. The letter identified those documents and records reviewed by the Nurse Consultant and Independent Physician Consultant upon which Defendant relied in making its decision. Included in these documents was medical information received from three of Plaintiff's doctors, Dr. Sheehan, Dr. Richard Kessal, and Dr. Shah, and his counselor, Mr. Ben Vyzas. According to the letter, Dr.

---

[1] Plaintiff contends he is suffering from Bipolar Disorder, Alcohol Dependence, Post-Traumatic Stress Disorder, Antisocial Personality Disorder, Depression and Barrett's Esophagus 9Dkt. 35).

Kessal's records indicated that Plaintiff continued to drink and did not make any reference to his inability to work. Additionally, the letter stated:

> The available medical documentation documents repeatedly that you have been alcohol dependent during the entire span of time from when you last worked at your job through your June 18, 2004 visit. Appropriate treatment for alcoholism includes abstinence and you have repeatedly avoided becoming abstinent. You have continued to drink and have refused offers of medical detoxification both as an inpatient and outpatient.
>
> The medical [information] provided from counselor Ben Vyzas indicates you were seen approximately two times per month. The last office visit note received was from treatment on July 16, 2004. The May office note indicates you continued to drink and were strongly encouraged to enter [an] inpatient program for detoxification. In May, you had a positive response to a Hawaii trip. You continued to drink while on the trip. The notes reflect that you continued to try your own business and you weren't sure if you would work.
>
> The July notes reflect that you continued with school and began working in the floor covering business. You were 10% owner and completed all job requirements.

Id., A.R. 140-141. The letter continued, stating:

> The medical [information] provided does not document that you are unable to function occupationally or interpersonally. The medical documentation indicates that you are not compliant with abstinence or with the recommendation for dedicated treatment for your alcohol dependence. [Y]ou are not under appropriate care and treatment, and the medical documentation received does not document that you are functionally precluded from performing your sales occupation.

Id., A.R. 141.

The letter offered Plaintiff an opportunity to appeal the decision. In order to appeal the decision, Plaintiff was to submit any additional documents relating to his claim. In support of his claim, Plaintiff submitted his forensic psychiatric evaluation performed by Dr. George M. Northrup. While Dr. Northrup's report details Plaintiff's painful past, the report

also notes that on each occasion Plaintiff visited, Plaintiff "smelled of alcohol." (Dkt. 29, A.R. 163). Dr. Northrup continued, stating "[o]n one occasion we discussed [the smell of alcohol] and [Plaintiff] informed me he had six drinks on that particular day." Id. Dr. Northrup, however, did not opine whether he felt Plaintiff was able to return to work.

After reviewing the additional documentation submitted by Plaintiff, Defendant forwarded a letter to Plaintiff on February 22, 2005, in which it informed Plaintiff the prior decision to deny his STD benefits was upheld and denied his appeal. Shortly thereafter, Plaintiff filed suit under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") seeking STD and LTD benefits.

## II. DISCUSSION

A.   *Summary Judgment Standard*.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

B.  *ERISA Standard of Review*.

There are three standards of review appropriate in ERISA decisions. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 110 S. Court. 948, 103 L.Ed. 2d 80 (1989) (comparing ERISA law to trust law and adopting the standards of review from trust law to fit ERISA cases). First, where an ERISA plan does not grant the fiduciary or plan administrator discretion to determine eligibility for benefits or to construe the terms of the plan, the Court will apply a *de novo* standard of review. See Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1135 (11th Cir. 2004); see also Marecek v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995). Second, when the plan does grant the fiduciary or plan administrator such discretion, the "arbitrary and capricious" standard applies.. See Williams, 373 F.3d at 1135. This standard affords the plan administrator the most deference, allowing for a reversal of the decision only if no "reasonable" grounds exist to support the plan administrator's decision. See id. at 1137-1138.

Finally, if the plan grants the fiduciary or administrator discretion, but the Court finds a conflict of interest between the fiduciary or administrator and the company, a "heightened arbitrary and capricious" standard applies, and the Court will consider this conflict in its analysis. See Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 (11th Cir. 1990) ("[W]e hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretations of plan provisions committed to its

discretion was not tainted by self-interest"). However, only if the Court disagrees with the ultimate decision of the administrator, i.e., the administrator's decision to deny benefits was wrong, does the Court examine whether a conflict exists. See Yochum v. Barnett Banks, Inc. Severance Pay Plan, 243 F.3d 541, 544 (11th Cir. 2000) (citing Maracek, 49 F.3d at 705). If the court does not disagree with the administrator, the inquiry ends. See Providence v. Hartford Life and Accident Insurance Company, 357 F. Supp. 2d 1341, 1345 (M.D. Fla. 2005) (citations omitted).

In the instant case, there does not appear to be any disagreement that the Plan granted Defendant discretionary authority in administering the Plan. In addition, it is undisputed the Plan was administered and funded by Defendant (Dkt. 28 at 2; Dkt. 35 at 4). However, there is a conflict as to what standard of review this Court should use in reviewing Plaintiff's claims. Plaintiff argues that the "heightened arbitrary and capricious" standard applies because a conflict of interest exists. Defendant argues that the more deferential arbitrary and capricious standard applies, but concedes that even if the heightened arbitrary and capricious standard applies, it is entitled to summary judgment because their decision to deny Plaintiff's STD benefits was not wrong. This Court agrees.

Under the terms of the Plan, disabled" or "disability" is defined as one who "due to sickness, pregnancy, or accidental injury . . . receiv[es] Appropriate Care and Treatment for a Doctor on a continuing basis; and . . .[is] able to earn more than 80% of [their] Predisability Earnings at [their] Own Occupation for any employer in [their] Local Economy." (Dkt. 29,

Ex. A). Appropriate Care and Treatment includes medical care and treatment that meet all the following conditions:

    (1)    it is received from a Doctor whose medical training and clinical experience are suitable for treating your Disability;

    (2)    it is necessary to meet your basic health needs and is of demonstrable medical value;

    (3)    it is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies;

    (4)    it is consistent with the diagnosis of your condition; and

    (5)    its purpose is maximizing your medical improvement.

(Dkt. 29-3). In reviewing the record, it is clear Plaintiff suffers from alcohol dependency. It is also clear that at the time his claim was denied it was recommended he engage in abstinence, alcohol detoxification as well as admittance into a rehabilitation center as forms of treatment, but treatment was either refused or ignored by Plaintiff.[2] The record clearly shows that while recommended courses of treatment were prescribed to Plaintiff, he was non-compliant and under the terms of the Plan he was not receiving "appropriate care and treatment for his condition."

---

[2] Plaintiff alleges that a material issue of fact exists as to whether Plaintiff entered into treatment for his alcohol dependence. According to Plaintiff, Defendant's argument that Plaintiff was not receiving appropriate care and treatment is contrary to the record, which reveals that Plaintiff was admitted into an outpatient detoxification program in June 2004 (Dkt. 35 at 15). However, the issue is not whether Plaintiff entered a program on one occasion <u>after</u> his benefits were denied. At the time Plaintiff's claim was denied, Plaintiff was not engaged in appropriate care and treatment on a consistent and continuing basis. Only after his claim was denied did he engage in somewhat consistent treatments/meetings with his counselor.

Moreover, Plaintiff's primary physician, Dr. Sheehan, indicated that Plaintiff was able to return to work and noted no accommodations which were necessary for him to do so. Plaintiff argues in his opposition motion that Dr. Sheehan's opinion should have been disregarded because he failed to provide any justification for his opinion, and because Defendant considered Dr. Sheehan's assessment and opinion of Plaintiff when making its decision, Defendant's decision was wrong. However, Plaintiff has provided no evidence that his disability prevented him from earning more than 80% of his Predisability Earnings at his own occupation. The evidence Plaintiff has presented, the psychiatric assessment from Dr. Northrup, is silent as to Plaintiff ability to return to work. Absent such evidence, this Court finds that Defendant's decision to deny Plaintiff's STD benefits was not wrong and Defendant's Motion for Summary Judgment is granted.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Metropolitan Life Insurance Company's Motion for Final Summary Judgment Based on Review of Administrative Record with Supporting Memorandum of Law (Dkt. 28) is **GRANTED**.

2. Judgment shall be entered in favor of Defendant and against Plaintiff.

3. The Clerk shall terminate any pending motions and CLOSE this file.

**DONE** and **ORDERED** in Tampa, Florida on July 21, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-425 ERISA MSJ.wpd